[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action was commenced by the plaintiff landlord against its tenant for breach of a lease agreement, seeking to recover the balance of rental payments claimed due under that lease. The plaintiff claims a valid lease was entered into by the parties, in writing and signed by the defendant, to rent space in the plaintiff's building on Greenwich Avenue in Greenwich for a three year period, from August 1, 1990 to July 30, 1993, at a monthly rental of $2,500. The defendant's position is that no written lease was ever consummated because there was no mutual assent by the parties to its terms, and therefore the defendant occupied the premises on an oral month to month lease.
The court finds the following facts. The defendant met Matthew Taubin, a partner in the plaintiff, on July 24, 1990 at the subject premises through the efforts of a real estate broker, one Millie Rosenberg. The defendant was in the market to rent commercial space for her business, and discussed a lease with Taubin. What they discussed was a five year lease at $30,000 per year ($2,500 per month) plus utilities. On that same day the defendant gave the plaintiff a check for $5,000 as a security deposit. Within days, the defendant had moved into the space and apparently opened for business.
The plaintiff's lawyer, attorney Bruce Cohen, prepared a CT Page 12111 lease and forwarded it to defendant's counsel, attorney Jonathan Rapaport, sometime in August 1990. The lease provided for the terms discussed between the parties, i.e. $2,500 per month plus utilities for a five year period. After the defendant reviewed the lease with her lawyer, two substantial changes and innumerable minor revisions were made by her counsel. The major changes were that the term of the lease was changed from five years to three years, with an option to renew, and the rental of $2,500 per month was now to include the utilities. The defendant's lawyer sent a "redlined" copy of the lease, executed by the defendant, to plaintiff's counsel. Thereafter, Mr. Cohen informed Mr. Rapaport that the changes proposed by the defendant were unequivocally rejected. The plaintiff eventually signed this lease but not until after the defendant had vacated the premises in February, 1992. The plaintiff paid a broker's commission based upon a three year lease, and never charged the defendant for the utilities, but included them in the rent. The defendant did not pay the rent for the month of September, 1991, but at her request the plaintiff applied one month security in the amount of $2,500 to that obligation.
The defendant experienced three floodings at the premises for which she received compensation from insurance companies, but did not then vacate the premises. On February 29, 1992 the defendant did vacate the premises and paid no rent thereafter. Plaintiff attempted to re-let the premises by listing it with a real estate broker, but this effort was unsuccessful during the balance of the three year term set forth in the written lease document.
The first issue before the court is whether a valid lease for three years was entered into by the parties. "To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties". Bridgeport Pipe Engineering Co. v.DiMatteo, 159 Conn. 242, 249, 268 A.2d 391 (1970). The defendant's submission to the plaintiff's counsel of the revised lease, signed by the defendant, constituted a counter offer to lease on those terms. The plaintiff never accepted that offer, but in fact through counsel informed the defendant that the terms were unequivocally rejected. Plaintiff claims that he verbally told the defendant that he accepted the new lease terms, and therefore he claims there was mutual assent. He points to the fact that pursuant to the terms of the revised lease. he never charged utilities to the defendant. He also paid the broker's fee on a three year lease basis. Be that as it may, there is no CT Page 12112 explanation why he did not inform his lawyer that he had agreed directly with the tenant to accept her terms, nor why he didn't insist that his lawyer communicate to defendant's counsel that there indeed was an agreement. nor why he did not sign the lease until after the defendant had vacated the premises. That he would have had to sign a "redlined" copy rather than a "clean copy" should not have prevented him from insuring that his claimed verbal acceptance of the defendant's terms would be memorialized. Attorney Cohen was never called as a witness to shed light upon this conflicting evidence.
As a result, the court cannot find that the plaintiff has proven by a preponderance of the evidence that there was ever that mutual assent between the parties, as to the terms of the lease, necessary to create a binding and enforceable agreement.
Because of this finding it is not necessary for the court to address the other claims of the defendant based upon constructive eviction and the plaintiff's failure to mitigate damages.
Judgment on the plaintiff's complaint may enter in favor of the defendant.
Furthermore, because the defendant owed no rent or other charges after she vacated the premises on February 29, 1992 she is entitled to a return of that portion of the security deposit still held by the plaintiff. At the defendant's request, the plaintiff had applied $2,500 of the deposit as payment of the rent for the month of September 1991. Therefore, the defendant is entitled to the return of the balance of the security deposit and judgment may enter on the counterclaim in favor of the defendant in the amount of $2,500.
No costs will be taxed.
D'ANDREA. J.